IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT PINHOLSTER,<br><br>    Plaintiff,<br><br>  v.<br><br>B. EBERT, et al.,<br><br>    Defendants.<br>_____/ | No. C 09-01744 SBA (PR)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' REQUESTS FOR JUDICIAL NOTICE; AND GRANTING THEIR MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>(Docket nos. 23, 24, 32) |

## INTRODUCTION

Plaintiff Scott Pinholster, a condemned state prisoner incarcerated at San Quentin State Prison ("SQSP"), filed a pro se civil rights complaint pursuant to 42 U.S.C. § 1983. Thereafter, he filed an amended complaint, alleging constitutional violations against the following Defendants at SQSP: Warden R. S. Wong; Associate Warden D. A. Dacanay; Facilitation Captain B. Grundy; Lieutenant D. Coleman; and Counselors B. Ebert and A. Mincey. Plaintiff alleges that the aforementioned Defendants violated his due process rights by classifying him as a Grade "B"[1] status inmate. Moreover, he contends that his due process rights were violated when these Defendants validated and then re-validated him as a gang associate of the Aryan Brotherhood prison gang and failed to provide periodic review of his validation. Finally, Plaintiff claims that SQSP Institutional Procedure number 608 ("IP 608"),[2] as it is applied to condemned prisoners, violates both his due process and equal protection rights. Plaintiff seeks monetary damages and injunctive relief.

Before the Court is Defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), or, in the alternative, their motion to stay the case pending resolution

---

[1] Condemned inmates are automatically segregated from other inmates. Grade "A" is the death row equivalent of being in general population. Those condemned inmates who pose security risks are reclassified as Grade "B" inmates. Grade "B" status is thus analogous to administrative segregation.

[2] IP 608 is a local policy drafted by the warden that governs the classification of condemned inmates as either Grade "A" or Grade "B." (Am. Compl., Ex. B.) IP 608 governs the day-to-day programming of condemned inmates at San Quentin. (Req. Jud. Not., Exh. G, Exh. A, p. 1.) On the other hand, with limited exceptions, Title 15 applies only to non-condemned inmates.

of Plaintiff's state habeas action, Case No. SC177532A, challenging the application of IP 608 to condemned inmates. That motion is fully briefed.

Also before the Court are Defendants' requests for judicial notice.

For the reasons discussed below, Defendants' requests for judicial notice are GRANTED IN PART AND DENIED IN PART; and their motion for judgment on the pleadings is GRANTED.

## BACKGROUND

### I. Factual Background

In 1994, Plaintiff was validated as an associate of the Aryan Brotherhood prison gang. (Am. Compl. at 3-C.) In 2003, he was re-validated as an associate of the Aryan Brotherhood prison gang. (Am. Compl. at 3-A.)

On June 6, 2008, Plaintiff filed a 602 inmate appeal (No. 08-01640) challenging the application of IP 608 to condemned inmates. (Am. Compl., Ex. B.) Plaintiff was interviewed by the first level reviewer of his 602 appeal. (Id.) At this level of review, Plaintiff was informed that "the condemned program does not fall under the [California Code of Regulations] Title 15 regarding [Secure Housing Unit ("SHU")] terms. The [SQSP] IP 608 is the governing authority for the condemned program." (Id.) Additionally, the first level reviewer explained to Plaintiff that he was kept on Grade "B" status because "of his disciplinary history and his documented gang activity . . . [Plaintiff's] placement on Grade 'B' is not a SHU term." (Id.)

Plaintiff's appeal was denied at the first level of review. Plaintiff's appeal was denied at the second level of review for substantially the same reasons. The Director's level reviewer explained to Plaintiff that the California Penal Code gives the warden the authority to make local prison policy. (Id.) The reviewer further explained that, pursuant to this authority, the warden had determined that IP 608 should apply to condemned inmates. (Id.) The Director's level reviewer also denied Plaintiff's appeal.

In his present amended complaint, Plaintiff raises many of the same claims that he raised in his prior 602 appeal. Plaintiff alleges that his classification as a Grade "B" inmate is invalid. Additionally, he contends that the process used to validate and re-validate him as a gang associate violated his due process rights because he was not allowed to properly respond to the source items

used for validation and because improper source items were used. He states as follows:

> The prior gang validation of alleged "Association" with the Aryan brotherhood which never fully disclosed all of the alleged source items prior to a L.E.I.U. review of the validation source items, no L.E.I.U. hearing was held where plaintiff was allowed to view the source items and in writing respond prior to the L.E.I.U. validation. These source items used do not meet the [C]astillo standards for use as source items, they are all confidental [sic] informants informations that only allege personal opinions and do not have any actual act or action as an order from a gang member.

(Am. Compl. at 3-C.) Moreover, Plaintiff contends that "mandatory yearly reviews" of his status as a gang associate were not conducted thereby further violating his due process rights. (Id.) Plaintiff alleges that the time period to conduct these reviews expired in 1998. (Id.) Finally, Plaintiff challenges the application of IP 608 to condemned inmates:

> . . . The I.P. 608 regulations are being illegally used to hold Plaintiff on work privilege Group D. The same as C.D.C.R. disciplinary punishment is held under for punishment. The I.P. 608 regulations are being used to remove the Cal. Code of Regs. - Title 15 prison regulations that are the state law mandated regulations owed to the Plaintiff.

(Id.) According to Plaintiff, Title 15 of the California Code of Regulations should apply to condemned inmates and, as such, the application of IP 608 to condemned inmates violates both his due process and equal protection rights. (Id.)

## II.     Procedural Background

Plaintiff filed his initial complaint in this action on April 21, 2009. Subsequently, Plaintiff filed an amended complaint on November 30, 2009.

In its Order of Service, dated February 15, 2012, the Court determined that Plaintiff had stated two separate claims in his amended complaint. First, the Court found that Plaintiff had stated a cognizable claim that the Grade "B"/Privilege Group D status designation "is in violation of due process because he was not afforded the procedural protections regularly provided to prisoners who are reclassified to more restrictive conditions of confinement." (Feb. 12, 2012 Order at 2.) Second, the Court found cognizable Plaintiff's claim that his designation as a Grade "B"/Privilege Group D inmate "also violates his right to equal protection." (Id.) The Court acknowledged that Plaintiff is seeking monetary damages and injunctive relief. (Id.) The Court directed the United States Marshal ("Marshal") to serve Defendants Wong, Dacanay, Grundy, Coleman, Ebert, and Mincey at SQSP, where Plaintiff indicated they were located. On February 16, 2012, notices of the lawsuit and

3

waivers were sent to the aforementioned Defendants. (Docket nos. 11-16.)

On February 29, 2012, T. Rossetti, the litigation coordinator at SQSP, notified the Court that Defendants Wong, Dacanay, Grundy, and Coleman had retired and, therefore, could not be served at SQSP. (Docket no. 17.)

In an Order dated March 13, 2012, the Court notified Plaintiff that the Marshal had been unable to effectuate service upon Defendants Wong, Dacanay, Grundy, and Coleman, and directed Plaintiff to provide the current addresses for these Defendants within thirty days of the March 13, 2012 Order. (Docket no. 18.) The Court also informed Plaintiff that the failure to provide the aforementioned Defendants' current addresses could result in the dismissal of all claims against them. Thereafter, on March 21, 2012, Plaintiff filed his "Request for Court Order of the Addresses to be Disclosed to the United States Marshals," requesting that the Court order the California Department of Corrections and Rehabilitation ("C.D.C.R."), the SQSP Litigation Coordinator, and/or the Attorney General's Office to disclose the current addresses of the unserved Defendants. (Docket no. 19.)

In a letter to the Marshal dated April 11, 2012, Erin Ganahl, the attorney for Defendants Ebert and Mincey, acknowledged receipt of summons, complaint and waivers as to Defendants Ebert and Mincey. (Docket no. 20.)

In an Order dated May 7, 2012, the Court denied Plaintiff's "Request for Court Order of the Addresses to be Disclosed to the United States Marshals." (May 7, 2012 Order at 2.) The Court again noted that service had been ineffective on Defendants Wong, Dacanay, Grundy, and Coleman. (Id. at 1.) Subsequently, the Court explained that because Plaintiff did not know where the aforementioned Defendants were located, all claims against them would be dismissed without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. (Id. at 2.)

On May 16, 2012, the served Defendants -- Defendants Ebert and Mincey (hereinafter "Defendants") -- filed their motion for judgment on the pleadings, or, in the alternative, their motion to stay the case pending the resolution of Plaintiff's state habeas action, Case No. SC177532A, challenging the application of IP 608 to condemned inmates. (Docket no. 23.)

On June 14, 2012, Plaintiff filed a motion for extension of time to file his opposition to

4

Defendants' motion for judgment on the pleadings.

In an Order dated June 15, 2012, the Court dismissed all claims against the unserved Defendants -- Defendants Wong, Dacanay, Grundy and Coleman, noting that Plaintiff had failed to effectuate service on these Defendants as required by Rule 4(m).

In that same Order dated June 15, 2012, the Court granted Plaintiff's motion for extension of time to file an opposition to Defendants' motion for judgment on the pleadings.

On August 30, 2012, Plaintiff filed his opposition. On September 21, 2012, Defendants filed their reply.

## DISCUSSION

**I.  Judicial Notice**

Defendants request judicial notice of: (1) the docket entries, pleadings, and judgment from Plaintiff's prior federal civil rights case, Pinholster v. Lawson, et al., Case No. C 04-5484 SBA (PR); (2) Plaintiff's state habeas actions, Case Nos. SC162678A and SC177532A; (3) this Court's Orders in Murillo v. Lee, et al., Case No. C 10-00584 JSW, and Rhinehart v. Cate, et al., Case No. C 11-0812 JSW; (4) the docket entries and pleadings in one of Plaintiff's state habeas actions, Case No. SC177532A.

Defendants' request for judicial notice of the docket entries and pleadings from Pinholster v. Lawson, et al., Case No. C 04-5484 SBA (PR) is GRANTED. See Fed. R. Evid. 201(b)(2) & (f); Commodity Futures Trading Comm'n v. Co Petro Marketing Group, Inc., 680 F.2d 573, 584 (9th Cir. 1982) (court may take judicial notice of plaintiff's prior complaints and orders dismissing them).

Plaintiff filed his prior pro se civil rights complaint in this Court in October 2004, challenging his Grade "B" classification. See Pinholster v. Lawson, et al., Case No. C 04-5484 SBA (PR). In his complaint, Plaintiff alleged that several letters that were used to validate him as an associate of the Aryan Brotherhood prison gang were inaccurate and, therefore, his classification as a Grade "B" status inmate, which was based on this association, was also invalid. Id. In that case, Defendants moved for summary judgment on the grounds that Plaintiff's due process rights were not violated by the procedure used to classify him as a Grade "B" inmate and that, in the alternative, Defendants were entitled to qualified immunity. Id. This Court granted summary judgment upon

1 finding no merit to Plaintiff's claim that he was denied due process because the decision to retain
2 him as a Grade "B" inmate was based on false evidence. <u>Id.</u>

3 Defendants' other remaining requests for judicial notice are DENIED as moot because, as
4 explained below, the Court need not address Defendants' motion to stay this case pending the
5 resolution of Plaintiff's state habeas action, Case No. SC177532A. Accordingly, Defendants'
6 requests for judicial notice are GRANTED IN PART AND DENIED IN PART.

## II. **Motion for Judgment on the Pleadings**

### A. **Standard of Review**

A Rule 12(c) motion for judgment on the pleadings may be brought at any time after the pleadings are closed, but within such time so as not to delay trial. Fed. R. Civ. P. 12(c). The standard applied to decide a Rule 12(c) motion is the same as the standard used in a Rule 12(b) motion to dismiss for failure to state a claim. Judgment on the pleadings is appropriate when, even if all material facts in the pleading are accepted as true, the moving party is entitled to judgment as a matter of law. <u>Westlands Water Dist. v. Firebaugh Canal</u>, 10 F.3d 667, 670 (9th Cir. 1993). For purposes of such a motion, "the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." <u>Hal Roach Studios, Inc. v. Richard Feiner and Co.</u>, 896 F.2d 1542, 1550 (9th Cir. 1989). However, a court need not automatically accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations. <u>See</u> <u>Western Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981). Although a court is generally confined to the allegations in the pleadings on a Rule 12(c) motion, a court may also consider documents whose contents are alleged in a complaint and whose authenticity no party questions. <u>See e.g.</u>, <u>Fecht v. Price Co.</u>, 70 F.3d 1078, 1080 (9th Cir. 1995) ("Such consideration does 'not convert the motion to dismiss into a motion for summary judgment.'").

### B. **Plaintiff's Grade "B" Classification**

Plaintiff alleges that Defendants violated his due process rights when they classified him as a Grade "B" inmate in 1994. (Am. Compl. at 3-A.) Specifically, Plaintiff claims that during his gang validation process, which served as the basis for his classification as a Grade "B" inmate, Defendants

**United States District Court**
For the Northern District of California

6

1   never fully disclosed all of the source items that were used to validate Plaintiff as an associate of the
2   Aryan Brotherhood prison gang. (Id.)  Plaintiff also claims that he was not given an opportunity to
3   view the source items and respond to them in writing prior to his validation. (Id.)  He further alleges
4   that the source items used in his validation process were improper. (Id.)

5   In their Rule 12(c) motion, Defendants assert a res judicata defense as to Plaintiff's claim
6   regarding his Grade "B" classification. Specifically, they argue that "[Plaintiff] has brought this 42
7   U.S.C. § 1983 action to challenge his Grade 'B' classification. But he has already litigated before
8   this Court, and lost, the issue of whether his Grade 'B' classification violated his due process rights."
9   (Mot. for J. on the Pleadings at 1.)

10   In non-diversity cases, federal courts apply federal law to determine the preclusive effect of
11   prior federal court judgments. Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 324
12   n. 12 (1971).  The doctrine of res judicata, or claim preclusion, provides that a final judgment on the
13   merits bars further claims by the parties or their privies based on the same cause of action. Tahoe-
14   Sierra Pres. Council v. Tahoe Reg'l Planning Agency, 322 F.3d 1064, 1077 (9th Cir. 2003). The
15   doctrine prohibits the re-litigation of any claims that were raised or could have been raised in a prior
16   action. W. Radio Servs. Co., Inc. v. Glickman, 123 F.3d 1189, 1192 (9th Cir.1997). It is irrelevant
17   whether the new claims that the plaintiff seeks to pursue were actually pursued in the action that led
18   to the judgment; rather, the question is whether they could have been brought in the previous case.
19   Tahoe-Sierra Pres. Council, 322 F.3d at 1078.

20   The Ninth Circuit has listed four factors which may be considered when determining whether
21   successive claims constitute the same cause of action: (1) whether rights or interests established in
22   the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether
23   substantially the same evidence is presented in the two actions; (3) whether the two suits involve
24   infringement of the same right; and (4) whether the two suits arise out of the same transactional
25   nucleus of facts. Int'l Union of Operating Engineers-Employers Const. Indus. Pension, Welfare &
26   Training Trust Funds v. Karr, 994 F.2d 1426, 1492 (9th Cir. 1993). These factors, however, are
27   "tools of analysis, not requirements." Id. at 1430. For example, the Ninth Circuit has previously
28   applied the doctrine of res judicata solely on the ground that the two claims arose out of the same

transaction, without reaching the other factors. See id. at 1430.  Determining whether two events are part of the same transaction is essentially dependent on whether the events are related to the same set of facts and whether the events could conveniently be tried together.  See id. at 1429.

In Plaintiff's previous case involving his Grade "B" status, Pinholster v. Lawson, et al., this Court described his claims as challenging: (1) the accuracy of the source items used to classify Plaintiff as a Grade "B" inmate; and (2) the procedures used to classify him as a Grade "B" inmate. (Case No. C 04-5484 (SBA) (PR).)  The Court granted summary judgment as to these claims and entered judgment for Defendants.  The Ninth Circuit subsequently dismissed Plaintiff's appeal.

In the present case, Plaintiff challenges the procedure that Defendants employed to classify him as a Grade "B" inmate.  It is clear that the claims in both of Plaintiff's cases are part of the same transaction, are related to the same set of facts, and could conveniently have been tried together.  See Int'l Union of Operating Engineers-Employers, 994 F.2d at 1429.

In his opposition to Defendants' motion for judgment on the pleadings, Plaintiff asserts the same claim that he raises in his amended complaint: "Defendants have used the claims of 'association' to continue to hold Plaintiff on 'Grade B Status' based on this [sic] old 20 year old unproven claims." (Opp'n at 7.)  Plaintiff reasserts that his classification as a Grade "B" inmate is invalid.  (Id.)  He does not argue that his claims in the present case differ in any way from the claims in his previous case before this Court.  Plaintiff's claim challenging his Grade "B" status was litigated in his prior case before this Court, and, in that case, the Court reached a final judgment on the merits, granting summary judgment for the Defendants.  Therefore, Plaintiff's present claim challenging his Grade "B" status is barred by the principles of res judicata, since it involves the same parties and same claim which was resolved by way of a final judgment.  As such, Defendants are entitled to judgment as a matter of law with respect to this claim.  See Int'l Union of Operating Engineers-Employers, 994 F.2d at 1429.

### C. Plaintiff's Gang Validation and Re-Validation

Additionally, Plaintiff challenges his 1994 gang validation and subsequent re-validation. (Am. Compl. at 3-A, 3-C.)  Specifically, he alleges that both the validation process itself and Defendants' subsequent failure to provide periodic review of his status as a prison gang associate

1 violated his due process rights. (Id.)  Defendants contend that Plaintiff's claim challenging his
2 validation and re-validation as a prison gang associate and his claim challenging Defendants' failure
3 to provide periodic review of that validation are barred by the applicable statute of limitations.

4      The appropriate limitations period for a § 1983 claim is that of the forum state's statute of
5 limitations for personal injury torts.  See Wilson v. Garcia, 471 U.S. 261, 276 (1985), superseded by
6 statute on other grounds, as stated in Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 377-78
7 (2004); TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999).  Before January 1, 2003, the statute
8 of limitations for personal injury torts in California was one year.  Cal. Civ. Proc. Code § 340(3)
9 (repealed 2002).  However, effective January 1, 2003, the relevant statute of limitations in California
10 for personal injury actions is the two-year period set forth at California Civil Procedure Code §
11 335.1 and is the applicable statute in § 1983 actions.  See Maldonado v. Harris, 370 F.3d 945, 954
12 (9th Cir. 2004).  However, the two-year statute of limitations does not apply retroactively to actions
13 accruing before 2003.  Id. at 955.

14      Federal law determines when a cause of action accrues and when the statute of limitations
15 begins to run in a § 1983 action.  Wallace v. Kato, 549 U.S. 384, 388 (2007).  Under federal law, a
16 claim generally accrues when the plaintiff knows or has reason to know of the injury which is the
17 basis of the action.  See TwoRivers, 174 F.3d at 991-92.  Federal law, not state law, determines
18 when an action "commences" for purposes of the statute of limitations and federal law tells how to
19 compute the time for purposes of determining when an action is commenced where the underlying
20 cause of action is federal.  Sain v. City of Bend, 309 F.3d 1134 at 1136-37 (9th Cir. 2002).  Thus, an
21 action in federal court containing a federal cause of action such as a § 1983 claim is commenced by
22 filing a complaint with the court.  See id. (citing Fed. R. Civ. P. 3).

23      Plaintiff's first claim is that Defendants used improper procedures to validate him as an
24 associate of the Aryan Brotherhood prison gang.  (Am. Compl. at 3-C.)  As mentioned above,
25 Plaintiff was validated as a gang associate in 1994.  (Id.)  Plaintiff was re-validated as a gang
26 associate in 2003.  (Id. at 3-A.)  Therefore, the cause of action with respect to Plaintiff's claim
27 challenging his initial validation accrued in 1994, and the cause of action with respect to Plaintiff's
28 challenge to his re-validation accrued in 2003.  See TwoRivers, 174 F.3d at 991-92.  The statute of

limitations on Plaintiff's claim challenging his initial gang validation expired one year later, in 1995. See Maldonado, 370 F.3d at 955. The statute of limitations on Plaintiff's challenge to his re-validation expired two years later, in 2005. See id. at 954. Plaintiff filed his present amended complaint in 2009. Therefore, Plaintiff's claim challenging his initial validation and subsequent re-validation is barred by the applicable statute of limitations. See TwoRivers, 174 F.3d at 991-92.

Plaintiff further alleges that Defendants failed to provide periodic review of his gang validation. (Am. Compl. at 3-C.) As previously discussed, Plaintiff was validated as an associate of the Aryan Brotherhood prison gang in 1994. (Id.) Plaintiff alleges that the time period to perform inactive review of his status as a prison gang associate "expired in 1998." (Id.) Therefore, the cause of action with respect to this claim accrued in 1998. See TwoRivers, 174 F.3d at 991-92. Pursuant to Maldonado, the statute of limitations on this claim expired one year later, in 1999. 370 F.3d at 955. Plaintiff filed his present amended complaint in 2009. Therefore, this claim is also barred by the applicable statute of limitations. See TwoRivers, 174 F.3d at 991-92.

In sum, Plaintiff's claim challenging his initial validation and re-validation as a prison gang associate as well as his claim challenging Defendants' failure to provide periodic review of his validation are barred by the applicable statute of limitations under California law. Accordingly, Defendants are entitled to judgment as a matter of law with respect to these claims.

### D. The Application of IP 608 to Condemned Inmates

Finally, Plaintiff alleges that the application of IP 608 to condemned inmates violates both his due process and equal protection rights. (Am. Compl. at 3-C.) Defendants argue that Plaintiff fails to state a claim under § 1983 because, although he claims that his due process and equal protection rights have been violated, his claim is actually based on state law violations. (Mot. for J. on the Pleadings at 11.) In the alternative, Defendants move to stay this case pending resolution of Plaintiff's state habeas action, Case No. SC177532A, which also challenges the validity of IP 608 as it is applied to condemned inmates. (Id. at 13.)

Section 1983 does not impose liability for violations of duties arising out of state tort law or other state statutes. DeShaney v. Winnegbago County Social Service Department, 489 U.S. 189, 201-03 (1989) (state tort law); Barry v. Fowler, 902 F.2d 770, 772 (9th Cir. 1990) (state statute).

10

There must be a specific constitutional guarantee safeguarding the interests that have been invaded. Paul v. Davis, 424 U.S. 693, 697 (1976).

Here, Plaintiff alleges that IP 608 was adopted in violation of the Administrative Procedures Act and that applying IP 608 to condemned inmates denies them the "due process protections of the Cal. Code of Regs - Title 15." (Am. Compl. at 3-C.) As previously discussed, IP 608 constitutes local policy enacted by the warden at SQSP. The California Penal Code gives the warden the authority to enact and apply such local policy. Plaintiff argues that because Title 15 of the California Code of Regulations should apply to condemned inmates, this Court should render IP 608 invalid. The Court finds that Plaintiff's allegations involve a denial of the procedures ensured by Title 15 of the California Code of Regulations, which is state law. Because Plaintiff is alleging violations of state law, Plaintiff fails to state a cognizable claim under Section 1983. See Barry, 902 F.2d at 772.

Upon having determined that Plaintiff has not stated a cognizable claim under Section 1983 and has, instead, alleged only violations of state law, the Court need not address Defendants' motion to stay this case pending the resolution of Plaintiff's state habeas action, Case No. SC177532A.

**E.   Summary**

Plaintiff's allegations in his amended complaint, even if taken as true, are insufficient and fail to establish that Defendants violated his equal protection and due process rights. Therefore, Defendants' motion for judgment on the pleadings is GRANTED as to all claims. Accordingly, Plaintiff's claims are DISMISSED.[3]

**CONCLUSION**

For the foregoing reasons, the Court orders as follows:

1. Defendants' requests for judicial notice (Docket nos. 24, 32) are GRANTED IN PART AND DENIED IN PART.

---

[3] In light of this dismissal, the Court need not address Defendants' alternative argument that they are entitled to qualified immunity.

11

2. Defendants' motion for judgment on the pleadings (Docket no. 23) is GRANTED.

3. The Clerk of the Court shall enter judgment in favor of Defendants, terminate all other pending matters, and close the file.  All parties shall bear their own costs.

4. This Order terminates Docket nos. 23, 24, and 32.

IT IS SO ORDERED.

DATED: 9/28/12

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge

<div style="sidebar">**United States District Court**
For the Northern District of California</div>

1

2 UNITED STATES DISTRICT COURT

3 FOR THE

4 NORTHERN DISTRICT OF CALIFORNIA

5

6

7 SCOTT PINHOLSTER,                                  Case Number: CV09-01744 SBA

8              Plaintiff,                            **CERTIFICATE OF SERVICE**

9   v.

10 R S WONG et al,

11              Defendant.
                                              /
12

13 I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

14

15 That on October 11, 2012, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located

16 in the Clerk's office.

17

18

19 Scott Pinholster #C87601
   San Quentin State Prison
20 San Quentin, CA 94974

21 Dated: October 11, 2012
                                              Richard W. Wieking, Clerk
22                                            By: Lisa Clark, Deputy Clerk

23

24

25

26

27

28

G:\PRO-SE\SBA\CR.09\Pinholster1744.grantMJOP.wpd            13